NATIONAL FEDERATION OF
FEDERAL EMPLOYEES, et
al., Appellants,
v.
Richard B. CHENEY, Secretary of
Defense, et al.
No. 88–5271.
United States Court of Appeals,
District of Columbia Circuit.
Dec. 22, 1989.

Before WALD, Chief Judge, MIKVA,
HARRY T. EDWARDS, RUTH BADER
GINSBURG, SILBERMAN, BUCKLEY,
WILLIAMS, D.H. GINSBURG and
SENTELLE, Circuit Judges.
On Appellants' Suggestion for
Rehearing *En Banc*

ORDER

PER CURIAM.

Appellants' Suggestion for Rehearing
*En Banc* has been circulated to the full
court. The taking of a vote was requested.
Thereafter, a majority of the judges of the
court in regular, active service did not vote
in favor of the suggestion. Upon consider-
ation of the foregoing it is

ORDERED, by the Court *en banc*, that
the suggestion is denied.

Chief Judge WALD and Circuit Judges
MIKVA and EDWARDS would grant the
suggestion.

A statement of Circuit Judge D.H. GINS-
BURG, concurring in the denial of rehear-
ing en banc, joined in by Circuit Judges
SILBERMAN, WILLIAMS, and SEN-
TELLE is attached.

A statement of Circuit Judge MIKVA,
dissenting from the denial of rehearing en
banc, joined in by Chief Judge WALD and
Circuit Judge HARRY T. EDWARDS, is
attached.

D.H. GINSBURG, Circuit Judge,
concurring in the denial of rehearing
en banc, with whom SILBERMAN,
WILLIAMS, and SENTELLE, Circuit
Judges, concur:

Contrary to the claim made by petitioner
National Federation of Federal Employees

in urging the court to rehear this case *en
banc*, there is no conflict between the deci-
sions here and in *C C Distributors, Inc. v.
United States*, 883 F.2d 146 (D.C.Cir.1989),
decided three days earlier. In *National
Federation of Federal Employees v. Che-
ney*, 883 F.2d 1038 (D.C.Cir.1989) (*NFFE*),
we held that federal employees lack stand-
ing to challenge a decision to contract out
government work because their interest is
"inconsistent" with Congress's purpose, in
§ 1223 of the 1987 National Defense Au-
thorization Act, of removing unwarranted
" 'handicaps' against government contrac-
tors," *id.* at 1050–51; in *C C Distributors*
we held that private contractors have such
standing because their interest in compet-
ing for government contracts is "closely
related to" Congress's goal of improving
efficiency through contracting out; as the
legislative history showed, "DOD had pre-
viously handicapped private contractors" in
ways that the Act was intended to pre-
clude, 883 F.2d at 153. In applying the test
for prudential standing, therefore, these
decisions merely conclude that private con-
tractors fall within, and federal employees
without, "the zone of interests ... protect-
ed or regulated by the statute ... in ques-
tion," *Association of Data Processing Ser-
vice Orgs., Inc. v. Camp*, 397 U.S. 150, 153,
90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)
(footnote omitted), *i.e.*, § 1223 of the 1987
Authorization Act.

As we discussed in *C C Distributors*, the
Senate Report referred to that statute as a
"mandatory contracting out provision" and
stated that it would newly "enable private
industry to compete with the government
sector whenever possible...." S.Rep. No.
331, 99th Cong. 2nd Sess. 277 (1986), *re-
printed in* 1986 U.S.Code Cong. & Admin.
News 6413, 6472. *See C C Distributors*,
883 F.2d at 152. On this basis, we found it
reasonable to infer that Congress intended
to permit the plaintiff contractors to bring
a suit challenging the decision of the Air
Force, without comparing the relative
costs, to displace private contractors with
in-house employees in order to perform cer-
tain procurement functions. *Id.* at 148–49.
Although we did not expressly hold that
private contractors were "intended benefi-

ciaries" of the Act, *see Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 923 (D.C.Cir.1989) (*HWTC IV*), as they may well be, it was at least apparent that their interests systematically coincide with Congress's interest in encouraging contracting out. *See C C Distributors*, 883 F.2d at 153.

Congress mandated contracting out not as an end in itself, of course, but in order to promote economy and efficiency in government. *See id.* at 152–53. Economy and efficiency are promoted not through indiscriminate use of private contractors, but by contracting out only where that is less expensive than using in-house employees, such as are represented by NFFE. Thus, petitioners argue, the real interest of government employees in challenging contracting out decisions is consistent with Congress's intent, because the employees will prevail in getting the work only when they can make it cheaper for the Government to have them do the work.

The prudential standing test focuses not upon whether the outcome of a particular case might be consistent with the public interest, but upon whether furtherance of the challenger's interest is likely consistent with Congress's intent. *See HWTC IV*, 885 F.2d at 925–26. Adopting the level of generality suggested by petitioners would eviscerate the prudential standing test: challengers to agency actions might as reasonably assert that because Congress's interest in adopting any statute is to promote the public welfare, they have standing because they will not prevail unless their position is found to be consistent with the public welfare.

The prudential standing test is not so porous a filter. It screens out challenges by persons whom the court cannot rationally infer that "Congress 'intended ... be relied upon to challenge agency disregard of the law.'" *Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987) (*quoting Block v. Community Nutrition Institute*, 467 U.S. 340, 347, 104 S.Ct. 2450, 2454–55, 81 L.Ed.2d 270 (1984)).

Here, we deal with a statute by which Congress expressed its intention to im-

prove the relative position of private contractors, who had previously been handicapped by employees on the inside track. *See C C Distributors*, 883 F.2d at 152. Government employees were clearly not the intended beneficiaries of a statute designed to promote contracting out, nor are their interests systematically coincident with—on the contrary, they are systematically incongruent with—the objective of the statute. *See HWTC IV*, 885 F.2d at 924. Their suits therefore "are more likely to frustrate than to further," *Clarke*, 479 U.S. at 397 n. 12, 107 S.Ct. at 756 n. 12, Congress's attempt to overcome the innate bias of government agencies against contracting out.

MIKVA, Circuit Judge, joined by WALD, Chief Judge, and HARRY T. EDWARDS, Circuit Judge, dissenting from the denial of rehearing en banc:

As I stated in my dissent in this case, I think the court has chosen to contravene the Supreme Court's clear teachings on prudential standing. As disturbing, it has twisted a congressional mandate to suit a purpose Congress never expressed.

I am genuinely perplexed by the majority's conclusion that the petitioners in this case lack prudential standing. The Supreme Court has stated on several occasions that the zone-of-interest test denies standing to a prospective plaintiff *only* if that party's "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987). The majority does not deny that this indisputably generous approach to prudential standing controls our decision. Yet, the court has turned a presumption in favor of judicial review into an almost irrebuttable presumption against such review.

The court acknowledges, as it must, that Congress' obvious intent to promote efficiency and economy is furthered only by contracting out when it is less expensive than using in-house employees. *See* Statement Concurring in Denial of Rehearing *En Banc* ("Conc. St.") at 3. Section

1223(a) of the National Defense Authorization Act for 1987 (the "Act") specifically requires the Secretary of Defense to obtain supplies and services from the private sector "*if* such a source can provide such supply or service to the department *at a cost that is lower* ... than the cost at which the Department can provide the same supply or service." (emphasis added). Congress' mandate was not designed to give an unconditional preference to private contractors.

Obviously, allowing the petitioners to challenge contracting-out decisions provides a control rod that would further Congress' interest in the economical acquisition of supplies and services. The majority tacitly acknowledges this. Nonetheless, the court inexplicably transmutes this specific congressional purpose into a nonspecific interest in the public welfare. Conc.St. at 4. Having made this unjustified leap into the realm of "generalized grievance" with no effort to explain how it crossed the intervening chasm of credulity, the court has no trouble dismissing the petitioners' claim.

The court's warning that allowing petitioners standing would "eviscerate the prudential standing test," *id.*, rings hollow. Adopting the role of floodgate attendant, the court asserts that would-be plaintiffs could claim standing to challenge any agency action because Congress always legislates to serve the public welfare and such plaintiffs "will not prevail unless their position is found to be consistent with the public welfare." *Id.* This analogy is fundamentally flawed. Congress' specific interest in ensuring that goods and services are purchased by the government at the lowest possible cost cannot plausibly be equated with some undefined concern for the common good. Additionally, petitioners are the only parties whose interests would motivate them to challenge the agency's decision to contract out when in-house provision of goods and services is actually cheaper. *See NFFE v. Cheney*, 883 F.2d 1038, 1058 (D.C.Cir.1989) (Mikva, J., dissenting). Despite the majority's contrary—though unexplained—conclusion, the petitioners' unique position makes them "particularly suitable challenger[s] of ad-

ministrative neglect ... and supports an inference that Congress would have intended eligibility." *Hazardous Waste Treatment Council v. EPA*, 861 F.2d 277, 283 (D.C.Cir.1988) (per curiam), *cert. denied,* —— U.S. ——, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989).

The court's last assault on petitioners' claim of standing directly contravenes the Supreme Court's standing jurisprudence. The court asserts that the Act was designed to improve the relative position of private contractors and, therefore, that the petitioners were clearly not Congress' intended beneficiaries. This basis for objecting to petitioners' standing is startling given the Supreme Court's teaching in *Clarke* that "[t]he [zone-of-interest] test is not meant to be especially demanding; in particular, *there need be no indication of Congressional purpose to benefit the would-be plaintiff.*" 479 U.S. at 399–400, 107 S.Ct. at 757 (emphasis added). To the extent that the court has created an analog of "intended beneficiary" in its "systematic congruence of interests" requirement, *see* Conc.St. at 3, 5, it has assumed a course that has been proscribed by the Supreme Court.

In addition, the court sails into a theory of the legislative process that is unreal and unworldly. The court asserts conclusorily that the petitioners' interests are "systematically incongruent" with Congress' purpose in passing the Act. The majority seems to ascribe to Congress an unqualified intent to improve the position of private contractors, and assumes that this was the prime—nay, only—purpose of the Act. Congress almost never mandates a single class of "winners," inscribing all others in the "Book of Losers"; that is not the way the legislative process works. Here, as always, Congress satisfies its pluralistic responsibilities by balancing the interests at stake. Congress required the Secretary to choose private contractors *only* if these contractors could provide supplies or services at a lower cost than in-house employees. Allowing in-house employees to demonstrate lower-cost capability would infringe upon no benefit that Congress intended to confer upon private contractors. Indeed, it would carry out the basic plan

that Congress ordained, a plan that the majority has rewritten with a most perverse use of the standing doctrine.